UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CALVIN BLOOMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:15CV174 RLW |
| ) | |
| MISSOURI DEPARTMENT OF ) | |
| CORRECTIONS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 79). The motion is fully briefed and ready for disposition.

### I. Background

Plaintiff Calvin Bloomer ("Plaintiff") was incarcerated at the Southeast Correctional Center ("SECC") from January 2102 through September 2015. (Defs.' Statement of Uncontroverted Material Facts ["DSUMF"] ¶ 1, ECF No. 81) Plaintiff was placed in the protective custody ("PC") unit upon arrival. (First Am. Compl. ["FAC"] ¶ 19, ECF No. 18) In October of 2013, Defendant Ian Wallace ("Wallace") was the warden at SECC; Defendant Kevin McKay ("McKay") was a lieutenant at SECC; Defendant Jesse May ("May") was a sergeant at SECC; and Defendant Charles Wilson ("Wilson") was a correctional officer at SECC. (DSUMF ¶¶ 3-6)

On or about October 3, 2013, Plaintiff took some pills in order to harm himself. (FAC ¶ 20; DSUMF ¶ 10) He was placed on suicide watch and received a conduct violation. (FAC ¶ 20) According to Plaintiff, he was released from suicide watch on October 8, 2013, and Defendant McKay told Plaintiff that he was no longer under PC and would be placed in

administrative segregation. (FAC ¶¶ 21-24; DSUMF ¶¶ 11-12) Defendant Wilson handcuffed Plaintiff to a restraint bench, after which Defendant May approached Plaintiff and informed him that there were only two open cells, and Plaintiff would be placed in a cell with Shaun King ("King"). (FAC ¶¶ 23 26; DSUMF ¶¶ 12-13) At that time, Plaintiff was 5 feet 7 inches tall and weighed around 167 pounds. King measured 6 feet 8 inches and weighed 268 pounds (Pl.'s Additional Statement of Material Facts ["PSMF"] ¶¶ 145-46, ECF No. 82) Plaintiff told May that he believed he was still under PC status; however, Plaintiff did not explicitly ask for protective custody or otherwise have any knowledge of any prior assaults by King. (DSUMF ¶¶ 16, 43, 101; Pl.'s Response to DSUMF ¶¶ 16, 43, 101) If Plaintiff would have told the officers that he was afraid of King or verbally requested PC, Plaintiff would not have been placed in a cell with King. (DSUMF ¶¶ 76, 87, 103)

Plaintiff further alleges that Defendants McKay and May instructed Plaintiff to be placed in a cell with King around 5:00 p.m. (DSUMF ¶ 15) After the 10:00 p.m. count and after lights out, King gave Plaintiff an option to either fight or have sex. (FAC ¶¶ 37-38; DSUMF ¶¶ 17-18) Plaintiff alleges that King held an object wrapped in toilet paper which King indicated was a knife, and King forced Plaintiff to perform sexual acts with King. (FAC ¶¶ 39-41; DSUMF ¶¶ 19-20) Plaintiff testified that he did not yell for help because he was afraid of King. (DSUMF ¶ 21; Pl.'s Response to DSUMF ¶ 21)

Once the sexual assault ended, Plaintiff sent three "kites"[1] by placing the word "urgent" on a slip of paper and sliding it under the door for the shift commander to read. (FAC ¶ 42) Correctional Officer Dysinger read the kite and removed Plaintiff from the cell. (DSUMF ¶ 22) Plaintiff was then taken to the hospital for a rape examination. (FAC ¶ 43) Plaintiff was placed

---

[1] "Kites" are letters to staff describing the alleged incident and indicating urgency. (DSUMF ¶ 21)

2

in a different housing unit and was never again placed in a cell with King. (DSUMF ¶¶ 23, 25) An investigation of the alleged rape was conducted. (DSUMF ¶ 26; PSMF ¶ 137)

On March 11, 2015, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983. He filed a First Amended Complaint on April 27, 2015 under § 1983, alleging that Defendants violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (FAC, ECF No. 18) Specifically, Plaintiff contends in Count I that the Defendants had a duty to protect Plaintiff from a known, credible threat of violence and that they disregarded the substantial risk of sexual assault by King. (FAC ¶¶ 51, 55-58) Plaintiff claims the Defendants were deliberately indifferent to Plaintiff's need for safety and, as a proximate result of Defendants' acts and omissions, Plaintiff has suffered damages and injuries. (FAC ¶¶ 58-60) In Count II, erroneously captioned as Count III, Plaintiff contends that Defendant Wallace had a duty to ensure the safety of inmates and failed to properly train SECC employees in reckless disregard or deliberate indifference to Plaintiff's constitutional rights. (FAC ¶¶ 67-75)

On November 14, 2016, Defendants filed a Motion for Summary Judgment, asserting that there are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law. Plaintiff opposes the motion, arguing that the Court should deny Defendants' Motion for Summary Judgment because genuine issues of material fact exist.

## **II. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party.

3

*Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. Self-serving, conclusory statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. *O'Bryan v. KTIV Television,* 64 F.3d 1188, 1191 (8th Cir. 1995).

### III. Discussion

Defendants argue that Plaintiff has presented no evidence showing that Defendants were deliberately indifferent to Plaintiff's constitutional rights, and they are entitled to qualified immunity. Defendants further assert that the evidence demonstrates that Defendants responded in good faith to any potential threat King posed toward Plaintiff. Plaintiff contends that

4

Defendants knew or should have known that Plaintiff was in danger of being sexually assaulted by King and that they disregarded that risk. Thus, Plaintiff claims that Defendants were deliberately indifferent to Plaintiff's safety and are not entitled to qualified immunity.

"Qualified immunity protects governmental officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity permits "'officers to make reasonable errors,' *Habiger v. City of Fargo et al.*, 80 F.3d 289, 295 (8th Cir. 1996), and provides 'ample room for mistaken judgments.' *Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011). In addition, "[t]he defense protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

"On summary judgment, a defendant official is entitled to qualified immunity unless '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). The courts have discretion to decide which of the two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). However, district courts "may not deny qualified immunity without answering both questions in plaintiff's favor." *Walton*, 752 F.3d at 1116. "Although qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury

could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008) (citations omitted).

Here, Plaintiff raises two claims: (1) that Defendants Wallace, May, McKay, and Wilson were deliberately indifferent to Plaintiff's safety and failed to protect him from King, despite allegedly knowing that King had previously assaulted other inmates; and (2) that Defendant Wallace failed to train SECC guards and officers. The Court will discuss each count in turn.

### A. Failure to Protect

"Prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "A correctional official 'violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.'" *Jones v. Wallace,* 641 Fed. App'x 665, 666 (8th Cir. 2016) (quoting *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998)). A failure-to-protect claim under the Eighth Amendment "has an objective component, whether the situation presented a substantial risk of serious harm, and a subjective component, whether the prison official was deliberately indifferent to the inmate's health or safety." *Jackson*, 140 F.3d at 1151. With regard to the first requirement, "it is beyond dispute that a sexual assault is sufficiently serious to constitute a deprivation of [a prisoner's] constitutional rights." *Marsh v. Phelps Cty.*, No. 4:16CV3032, 2016 WL 165886, at *7 (D. Neb. Dec. 8, 2016).

To be liable for deliberate indifference under the subjective component, the official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "'Deliberate indifference includes something more than negligence but less than actual intent to

6

harm;' it requires proof of a reckless disregard of the known risk." *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (quoting *Jackson v. Everett,* 140 F.3d 1149, 1152 (8th Cir.1998) (citation and internal quotation omitted)). Such reckless disregard is shown only where an official "actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007) (citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not violate the Eighth Amendment. *Farmer*, 511 U.S. at 838. In addition, an official with knowledge of such a risk "may be found free of liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff asserts that Defendants Wallace, May, McKay, and Wilson were deliberately indifferent to his need for safety through the Defendants' knowledge and disregard of the substantial risk of serious harm to Plaintiff, specifically the fact that inmate King had previously sexually assaulted other inmates. With regard to Defendant McKay, Plaintiff alleges that McKay informed Plaintiff that he would be place in administrative segregation, not returned to protective custody, due to his conduct violation pertaining to the suicide attempt. (FAC ¶ 24) Further, Plaintiff claims that McKay instructed Defendant Wilson to place Plaintiff on the restraint bench and then in the cell with King. (FAC ¶¶ 23, 33) Specific to Defendant Wilson, Plaintiff alleges that Wilson escorted Plaintiff from suicide watch and initially said Plaintiff was returning to protective custody. (FAC ¶¶ 21-22) However, Wilson then placed Plaintiff in the cell with King at the instruction of McKay and Defendant May. (FAC ¶¶ 33) According to Plaintiff, Defendant May stated that the only available administrative segregation cell was with King, and that if Plaintiff refused the offered cell, he would receive a conduct violation and be restrained to the restraint bench for hours. (FAC ¶¶ 26-29) Plaintiff contends that Defendants aware of, or

7

should have been aware of, investigations into King regarding prior sexual assaults of other inmates. (FAC ¶¶ 31-35) With regard to Defendant Wallace, Plaintiff contends that Wallace failed to adequately supervise and control his subordinates by allowing Plaintiff to be placed in the cell with King. (FAC ¶ 45)

In support of his claims, Plaintiff relies on *Newman v. Holmes* for the proposition that even an unanticipated attack by an inmate can justify a prison official's liability under the Eighth Amendment. 122 F.3d 650 (8th Cir. 1997). In *Newman*, plaintiffs, prison inmates, alleged that a prison official was deliberately indifferent to the need to protect them from an attack by another inmate, when the official left open the cell door of an inmate in isolated confinement, and that inmate attacked the plaintiffs. *Id.* at 651. The Eighth Circuit Court of Appeals found that the evidence showed the prison official recklessly disregarded a known excessive risk to inmate safety by opening the door of an inmate known to be a potential risk to others. *Id.* at 653.

Plaintiff also relies upon *Wade v. Haynes*, wherein the plaintiff, an inmate of slight build, claimed that he was wrongfully placed in a rarely monitored administrative cell with a known violent inmate who beat and sexually assaulted plaintiff. 663 F.2d 778, 780-81 (8th Cir. 1981). The *Wade* court determined that the officer's "conduct was such that a jury could reasonably find that he either knew or should have known that the . . . prisoner . . . had been ordered separated from the other inmates for his own safety and the safety of others." *Id.* at 781.

Finally, Plaintiff contends that this case is analogous to *Walton v. Dawson*, 752 F.3d 1109 (8th Cir. 2014). In *Walton*, the plaintiff, a pretrial detainee, was sexually assaulted by an inmate after the jailer failed to lock the cell doors at night. *Id.* at 1114. An unwritten policy to lock the doors at night had been routinely ignored, and the inmate had previously sexually assaulted another inmate, about which incident the jailer knew. *Id.* at 1119. While discussed in the

8

context of an official's failure to train, the Eighth Circuit found that the cells were not locked and were rarely checked, creating a risk both obvious and known to prison officials in light of first hand observations and the plaintiff's fear. *Id.* at 1120. The *Walton* court found that "under the totality of the circumstances, failing to do anything to mitigate this risk . . . potentially fell below minimum constitutional standards. *Id.* (citations omitted).

The present case is distinguishable on its facts from *Newman*, *Wade*, and *Walton*. Here, Plaintiff is unable to show that King had a reputation of either sexual assault or violence that was known to Defendants. Nothing in the record indicates that Defendants May, McKay, or Wilson had prior knowledge of any previous assaults by King or any indication that he was a risk to others. Unlike *Walton*, the officers did not "[do] next to nothing" but immediately removed Plaintiff as soon as they were notified of the incident. *Id.* While the record shows that King had over 30 violations for conduct unrelated to violence, he had only one conduct violation for minor assault for fighting. (King Depo., PSMF Ex. J p. 8, ECF No. 82-10) Further, the evidence shows that, although he mentioned to May that he had previously been in housed under PC status, Plaintiff did not request PC. (Bloomer Dep., PSMF Ex. B pp. 22-24, ECF No. 82-2) Plaintiff did not express any fear or complaints when placed in the cell, and he did not yell out during the alleged rape. Further, none of the Defendants were aware of King's reputation or any prior sexual relationships or sexual assaults between King and other inmates at the time of the alleged assault. (DSUMF ¶¶ 94, 104, 113) Indeed, prior to October 2013, King had no conduct violations related to sexual misconduct. (DSUMF ¶ 130)

Plaintiff argues that he was placed in risk of substantial harm because he was a sex offender and he was housed in a cell with a man much large that had a prior assault violation such that Defendants must have known about the risk. However, this requires that Plaintiff

9

present evidence of "'very obvious and blatant circumstances' indicating that the defendant knew the risk existed." *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998). Such obvious circumstances are absent here.

The Court finds *Holden v. Hirner* instructive in this case. 663 F.3d 336 (8th Cir. 2011). In *Holden*, a sex offender was placed in a protective custody pod with three other inmates. *Id.* at 339. A fight erupted between the plaintiff and his cellmates, causing injuries to the plaintiff. *Id.* The plaintiff raised a failure to protect claim, arguing that he was placed in risk of substantial harm because he was a sex offender and because he was placed in protective custody with an inmate who was previously involved in a fight. *Id.* at 341. The plaintiff claimed that the prison officials were deliberately indifferent to his safety because they failed to take precautions to protect him despite being aware of the dangers faced by sex offenders in prison and the risk the inmate posed to plaintiff. *Id.* The Eighth Circuit disagreed and found that the plaintiff failed "to show anything in the record to establish this other inmate was a sex offender or [plaintiff] suspected the other inmate was a sex offender." *Id.* The *Holden* court reasoned, "[e]ven if we assume for summary judgment purposes Holden presented sufficient evidence that he faced a substantial risk of serious harm, Holden fails to establish the prison officials knew of and were deliberately indifferent to the danger." *Id.*

Likewise, in the instant case, Plaintiff is unable to establish that the Defendant officers knew of, and were indifferent to, any danger. King never threatened Plaintiff, and Plaintiff did not indicate that he felt threatened. "An inmate's history of violence alone is insufficient to impute to prison officials subjective knowledge of the inmate's danger to harm other inmates." *Id.* (citing *Norman v. Schuetzle,* 585 F.3d 1097, 1104–06 (8th Cir.2009)). "Courts 'must give substantial deference to prison officials to determine the best methods for dealing with dangerous

10

inmates in the volatile environment that is prison life.'" *Holden*, 663 F.3d at 341-42 (quoting *Norman*, 585 F.3d at 1105)).

At best, Plaintiff has presented evidence that Defendant Wilson checked after the fact and possibly discovered some complaints of sexual misconduct lodged against King that were not relayed to the Defendants. (DSUMF Ex. F p. 13, ECF No. 81-6; PSMF Ex. B pp. 11-12, 70, ECF No. 82-2)  Plaintiff has presented no evidence that any of the Defendants were actually aware of the prior minor assault involving King or any evidence that Defendants knew of any specific danger King posed toward Plaintiff.  As such, the evidence presented is insufficient to show the prison officials knew of and disregarded a known risk, and therefore, Plaintiff is unable to show that the Defendants deprived him of his constitutional right to be protected.[2]  Thus, Defendants are entitled to summary judgment on Plaintiff's failure to protect claim.  *See Burnett v. Acikgoz*, No. 4:13-CV-1990-JAR, 2015 WL 4603475, at *4-5 (E.D. Mo. July 30, 2015) (granting summary judgment in favor of defendants where the record did not raise a factual question suggesting that defendant knew of a substantial risk of harm and deliberately disregarded it).  Further, because Defendants' conduct did not violate Plaintiff's constitutional right to be protected from harm by fellow inmates, Defendants are also entitled to summary judgment on qualified immunity grounds.  *Id.* at *5; *see also Curry*, 226 F.3d at 978-79 ("We have held in a number of cases that prison officials are entitled to qualified immunity from § 1983 damage actions premised on an Eighth Amendment failure-to-protect theory when an inmate was injured in a surprise attack by another inmate.").

---

[2] Plaintiff's allegations that Defendant Wallace violated his duty to protect Plaintiff fails for the additional reason that Wallace was not present at the time and had no personal involvement. Prison supervisors cannot be held liable in § 1983 cases under a theory of *respondeat superior*. *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012) (citing *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010)).

## B. Failure to Train

Plaintiff also asserts that Defendant Wallace failed to properly train prison guards and officers to identify, assess, and prevent violent conflicts, including sexual assaults, between inmates. Plaintiff alleges that Wallace's failure to train was evidenced by the insufficient classification and protection provided to Plaintiff. Defendant Wallace argues that he is entitled to summary judgment because he provided adequate training and was not deliberately indifferent to Plaintiff.

"[A] supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citation omitted). For supervisory liability to attach, the court must first find individual liability on the underlying substantive claim. *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). In other words, "[w]ithout a showing that the [officers] violated the Constitution, however, there can be no liability for failure to train." *Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012) (citation omitted); *see also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) ("Because [the plaintiff] failed to establish [defendant officer] violated [plaintiff's] constitutional rights, [plaintiff] cannot maintain this action against [the supervisor].").

As discussed above, Plaintiff failed to establish that Defendants May, McKay, or Wilson violated his constitutional rights; therefore, Defendant Wallace cannot be held liable for failure to train on the § 1983 claims asserted against those Defendants. Further, having concluded that Defendants May, McKay, and Wilson are entitled to summary judgment on qualified immunity grounds, their supervisor, Defendant Wallace, is also entitled to summary judgment. *See Turpin*

*v. Cty. of Rock*, 262 F.3d 779, 784 (8th Cir. 2001) (finding county entitled to summary judgment where district court properly granted individual defendants summary judgment on qualified immunity grounds).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 79] is **GRANTED**.  A separate Judgment will accompany this Memorandum and Order.

Dated this 21st day of July, 2017.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**